No. 21-2475

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

JOHN M. KLUGE,
Plaintiff-Appellant,

v.

BROWNSBURG COMMUNITY SCHOOL CORPORATION,
Defendant-Appellee.

On Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division
Case No. 1:19-cv-02462
The Honorable Jane Magnus-Stinson

**BRIEF OF *AMICI CURIAE* THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION AND THE AMERICAN CIVIL LIBERTIES UNION OF INDIANA FOUNDATION IN SUPPORT OF DEFENDANT-APPELLEE BROWNSBURG COMMUNITY SCHOOL CORPORATION, SEEKING AFFIRMANCE OF THE DISTRICT COURT'S ORDER**

Lindsey Kaley
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
212-549-2500
lkaley@aclu.org

Kenneth J. Falk (Counsel of Record)
Gavin M. Rose
ACLU OF INDIANA
1031 E. Washington St.
Indianapolis, IN 46202
317-635-4059
kfalk@aclu-in.org
grose@aclu-in.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2475

Short Caption: John Kluge v. Brownsburg Community School Co

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    ACLU of Indiana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Kenneth J. Falk    Date: 11/8/2021

Attorney's Printed Name: Kenneth J. Falk

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: ACLU of Indiana, 1031 E. Washington St.

Indianapolis, IN 46202

Phone Number: 317/635-4059    Fax Number: 317/635-4105

E-Mail Address: kfalk@aclu-in.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2475

Short Caption: John Kluge v. Brownsburg Community School Co

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    ACLU of Indiana

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Gavin M. Rose    Date: 11/8/2021

Attorney's Printed Name: Gavin M. Rose

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: ACLU of Indiana, 1031 E. Washington St.

Indianapolis, IN 46202

Phone Number: 317/635-4059    Fax Number: 317/635-4105

E-Mail Address: grose@aclu-in.org

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2475

Short Caption: John Kluge v. Brownsburg Community School Co

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The American Civil Liberties Union Foundation, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Lindsey Kaley      Date: 11/8/2021

Attorney's Printed Name:  Lindsey Kaley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☒

Address:  125 Broad Street, 18th Floor

New York, NY 10004

Phone Number: 212-549-2500      Fax Number:  212-549-2646

E-Mail Address: lkaley@aclu.org

rev. 12/19 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS.....................................i

TABLE OF CONTENTS .............................................................................iv

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF AMICI CURIAE .............................................................. 1

AUTHORITY TO FILE AMICI BRIEF ...................................................... 1

SUMMARY OF ARGUMENT....................................................................... 2

ARGUMENT.................................................................................................. 4

   I.   KLUGE'S PREFERRED ACCOMODATION IMPOSES AN UNDUE
       HANDSHIP ON BROWNSBURG BASED ON THE PUBLIC SCHOOL'S
       DUTY TO PROTECT ITS STUDENTS AND THEIR INTEREST IN
       BEING TREATED WITH RESPECT.............................................. 4

      A.   A Public School Suffers an Undue Hardship Where an
          Accommodation Impedes Its Ability to Provide Lawfully Required
          Equal Public Education to Students....................................... 5

      B.   Public Employers Generally Meet the Undue Hardship Standard
          Where an Employee Accommodation Would Impede Access to
          Governmental Services.......................................................... 7

   II.  THE HARM FROM KLUGE'S ACCOMODATION TO DIRECTLY
       AFFECTED STUDENTS ESTABLISHES AN UNDUE HARDSHIP. .... 12

CONCLUSION ............................................................................................ 21

CERTIFICATE OF COMPLIANCE WITH RULE 32.......................... 22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. U.S.F. Logistics (IMC), Inc.*,
  274 F.3d 470 (7th Cir. 2001) .................................................................. 19

*Baz v. Walters*,
  782 F.2d 701 (7th Cir. 1986) ............................................................ 18, 19

*Berry v. Department of Social Services.*,
  447 F.3d 642 (9th Cir. 2006) .................................................................. 10

*Chalmers v. Tulon Co. of Richmond*,
  101 F.3d 1012 (4th Cir. 1996) ................................................................ 15

*Draper v. U.S. Pipe & Foundry Co.*,
  527 F.2d 515 (6th Cir. 1975) .................................................................. 17

*Edwards v. Aguillard*,
  482 U.S. 578 (1987) ................................................................................. 5

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015) ............................................................................... 16

*EEOC v. IBP, Inc.*,
  824 F. Supp. 147 (C.D. Ill. 1993) ........................................................... 17

*EEOC v. Walmart Stores E., L.P.*,
  992 F.3d 656 (7th Cir. 2021) ............................................................ 13, 14

*Endres v. Indiana State Police*,
  349 F.3d 922 (7th Cir. 2003) ............................................................ 7, 8, 9

*Erlach v. New York City Board of Education*,
  No. 94-CV-4239, 1996 WL 705282 (E.D.N.Y. Nov. 26, 1996) ................... 7

*Ermold v. Davis*,
  936 F.3d 429 (6th Cir. 2019) ............................................................ 11, 12

*Ervington v. LTD Commodities, LLC*,
  555 F. App'x 615 (7th Cir. 2014) ....................................................... 16, 19

*Knight v. Connecticut Department of Public Health*,
  275 F.3d 156 (2d Cir. 2001) .................................................................. 10

*Linke v. Northwestern School Corp.*,
  763 N.E.2d 972 (Ind. 2002) .................................................................... 5

*Matthews v. Wal-Mart Stores, Inc.*,
    417 F. App'x 552 (7th Cir. 2011) .............................................................. 15

*Mayer v. Monroe County Community School Corp.*,
    474 F.3d 477 (7th Cir. 2007) ......................................................... 5, 6, 11

*Noesen v. Medical Staffing Network, Inc.*,
    232 F. App'x 581 (7th Cir. 2007) .............................................................. 14

*Nottelson v. Smith Steel Workers D.A.L.U. 19806, AFL-CIO*,
    643 F.2d 445 (7th Cir. 1981) .................................................................... 14

*Peterson v. Hewlett-Packard Co.*,
    358 F.3d 599 (9th Cir. 2004) ............................................................. 14, 15

*Porter v. City of Chicago*,
    700 F.3d 944 (7th Cir. 2012) ..................................................................... 3

*Rodriguez v. City of Chicago*,
    156 F.3d 771 (7th Cir. 1998) .................................................................. 7, 8

*Ryan v. U.S. Department of Justice*,
    950 F.2d 458 (7th Cir. 1991) .............................................................. 7, 8, 9

*Schwingel v. Elite Protection & Security Ltd.*,
    No. 11-CV-8712, 2015 WL 7753064 (N.D. Ill. Dec. 2, 2015) .................. 20

*Shelton v. University of Medicine & Dentistry of New Jersey*,
    223 F.3d 220 (3d Cir. 2000) ..................................................................... 10

*Sides v. New York State Division of State Police*,
    No. 03-CV-153, 2005 WL 1523557 (N.D.N.Y. June 28, 2005) ................ 10

*Summers v. Whitis*,
    No. 4:15-CV-93, 2016 WL 7242483 (S.D. Ind. Dec. 15, 2016)................ 15

*Swartzentruber v. Gunite Corp.*,
    99 F. Supp. 2d 976 (N.D. Ind. 2000) ................................................. 15, 20

*Trans World Airlines, Inc. v. Hardison*,
    432 U.S. 63 (1977) ............................................................................. 13, 14

*United States v. Varner*,
    948 F.3d 250 (5th Cir. 2020) .................................................................... 11

*Vaughn v. Vilsack*,
    715 F.3d 1001 (7th Cir. 2013) ................................................................. 16

*Webster v. New Lenox School District No. 122*,
   917 F.2d 1004 (7th Cir. 1990) ...................................... 5

*Wilson v. U.S. West Communications*,
   58 F.3d 1337 (8th Cir. 1995) ...................................... 19

*Zamecnik v. Indian Prairie School District No. 204*,
   636 F.3d 874 (7th Cir. 2011) ...................................... 11

**Statutes**

42 U.S.C. § 2000e ...................................................... 3

**Other Authorities**

Indiana Constitution Article VIII, § 1 ............................ 5

## STATEMENT OF AMICI CURIAE

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with nearly two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Indiana is one of the ACLU's statewide affiliates with more than 14,000 members. The ACLU and the ACLU of Indiana (collectively, "*Amici*") submit this *amicus curiae* brief in support of Defendants-Appellees,[1] seeking affirmance of the district court's order. As organizations that advocate for religious liberty rights, as well as equal rights for lesbian, gay, bisexual, and transgender people, *Amici* and their members have a strong interest in the application of proper standards when evaluating statutory challenges involving civil rights laws.

## AUTHORITY TO FILE AMICI BRIEF

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *Amici* state that all parties have consented to the filing of this brief.

---

[1] Pursuant to Fed. R. App. P. 29, *Amici* state that no counsel for a party authored this brief in whole or in part and that no person other than *Amici* or their counsel made a monetary contribution to its preparation or submission.

## SUMMARY OF ARGUMENT

Governmental and public employers have duties to the public not shared by commercial businesses. In particular, public schools and the teachers that work there have unique obligations to the students they serve: The Indiana Constitution recognizes that the state's public schools must provide an education that is equally open to all students. And inside the classroom, teachers have a captive audience of students, who are subject to mandatory attendance requirements. Given these conditions, public schools cannot be legally required to permit teachers to engage in conduct that harms students in their classes—even where grounded in a teacher's religious belief. However, that is exactly what Appellant John Kluge has demanded from his former employer, Appellee Brownsburg High School.

At the start of the 2017–2018 school year, Brownsburg implemented a policy requiring all staff to use students' names and pronouns as found in the school-file database, and created a process for transgender and nonbinary students to update their names and pronouns to reflect their gender identity by submitting a letter from a parent and healthcare provider (the "Nondiscrimination Policy"). Required Short Appendix ("RSA") at 007–08. Kluge objected to the new policy, and initially, the school agreed that, for all students, he could use students' last names only, without using gendered honorifics or pronouns for any students. RSA-010. However, after a few months, school officials informed Kluge that his last-names-only accommodation was causing transgender students at the school to feel targeted and dehumanized, as well as generating other complaints from students and faculty, and as a result he would not be permitted to use students' last names only in the new school year. RSA-016–

19. Kluge eventually resigned from his position, RSA-017–22, and now claims that Brownsburg was required to grant him his preferred accommodation, regardless of the harm it did to students in his classes. But that is not what Title VII requires.

Brownsburg is a public school, charged with educating students as its mission. It has enacted a policy to respect transgender students' gender identity and chosen names as part of fulfilling that mission. Kluge's last-name-only policy did not just result in "complaints" from students—it resulted in harm to students in his classes. Because Kluge was a public employee, with students in his charge, the accommodation he sought would create a particularly serious and undue hardship for Brownsburg, which is obligated to protect the wellbeing of all students.

Title VII requires Brownsburg to "reasonably accommodate" an "employee's religious observance or practice," but not if it would result in "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *see also Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012). Kluge's preferred accommodation injured transgender students and undermined Brownsburg's policy of respect and mission to educate students. Title VII does not require that such an accommodation be reinstated.[2]

For these reasons, *Amici* urge this Court to affirm the district court's July 12, 2021, Order granting the Defendants-Appellees' motion for summary judgement,

_____

[2] *Amici* also agree with the district court's holding that because Kluge's continued use of students' last names could have led to a Title IX suit against the school for sex discrimination, Brownsburg's fear of liability offered an additional basis to reject Kluge's accommodation request, RSA-046–48, as well as with the district court's dismissal of Kluge's retaliation claims, RSA-050–51, but do not revisit those arguments here.

denying Plaintiff-Appellant's motion for partial summary judgement, and dismissing Plaintiff-Appellant's case.

## ARGUMENT

**I.    KLUGE'S PREFERRED ACCOMODATION IMPOSES AN UNDUE HANDSHIP ON BROWNSBURG BASED ON THE PUBLIC SCHOOL'S DUTY TO PROTECT ITS STUDENTS AND THEIR INTEREST IN BEING TREATED WITH RESPECT.**

Kluge, a public school teacher, argues that Brownsburg failed to accommodate his religious beliefs that preclude him from using transgender students' chosen names and pronouns. But he has sought an accommodation that would harm his students by disrespecting them and denying them an equal education. Such an accommodation undermines Brownsburg's obligations to educate and care for all its students. That is a particularly serious hardship that Brownsburg is not required to endure.  The district court found that, even assuming Kluge complied with his last-names-only approach (despite evidence that he had at times used pronouns or first names for students), that accommodation, adopted expressly because of his objections to transgender students, made the transgender students in his classes "feel targeted and uncomfortable." RSA-044. One transgender student "dreaded going to orchestra class and did not feel comfortable speaking to Mr. Kluge directly," and eventually "quit orchestra entirely." RSA-044. Other students likewise "complained that Mr. Kluge's behavior was insulting or offensive and made his classroom environment unwelcoming and uncomfortable." RSA-044. Given this evidence, Kluge's preferred accommodation burdened Brownsburg's "ability to provide an education to all

students and conflicted with its philosophy of creating a safe and supportive environment for all students." RSA-044–45.

### A. A Public School Suffers an Undue Hardship Where an Accommodation Impedes Its Ability to Provide Lawfully Required Equal Public Education to Students.

The district court correctly recognized that the injury to students from Kluge's preferred accommodation is a distinct harm to Brownsburg, because it impeded the school in fulfilling its duty to the public to provide equal access to education. RSA-044–46. Brownsburg's "business" is not merely providing goods and services, but is "providing public education, as required by Indiana statutory and constitutional law." RSA-043. As a public school, Brownsburg plays a "'custodial and protective role'" in providing education that is "'equally open to all.'" RSA-043 (quoting *Linke v. Nw. Sch. Corp.*, 763 N.E.2d 972, 979 (Ind. 2002); Ind. Const. art. VIII, § 1). Additionally, "'[t]he State exerts great authority and coercive power through mandatory attendance requirements.'" *Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004, 1007 (7th Cir. 1990) (quoting *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987)); *see also Linke*, 763 N.E.2d at 980 ("Today's public school officials act in furtherance of publicly mandated educational and disciplinary policies, and statutes on the books compel school attendance." (internal quotation marks and citations omitted)). Kluge's students are not simply patrons exchanging goods for pay; they are "a captive audience." *Mayer v. Monroe Cty. Cmty. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir. 2007). "Education is compulsory, and children must attend public schools unless their parents are willing to incur the cost of private education or the considerable time

commitment of home schooling. Children who attend school because they must ought not be subject to teachers' idiosyncratic perspectives." *Id.* As a "captive audience," subject to compulsory education laws, students in Kluge's classes are particularly at risk from policies that demean or target them.[3] And the harm is even greater when the practice is implemented by a teacher, who is charged with a custodial, protective role over all students.

To be clear, Kluge's accommodation does not merely subject his students to an "idiosyncratic perspective[]"; it does real harm to some of his students and the classroom environment as a whole. The district court correctly held that Brownsburg had demonstrated that the accommodation undermined its educational mission, as Kluge's refusal to use transgender students' chosen names and pronouns is "directly at odds" with the school's policy of respect for transgender students. RSA-044. Given Brownsburg's mission as a public school to educate students, Kluge's desire for an accommodation that harms students and undermines the school's policies to advance that goal must be rejected. It does not matter that some students might have been unbothered by Kluge's last-names-only policy; Brownsburg "is a public-school corporation and as such has an obligation to meet the needs of *all* of its students." RSA-045–46. As a matter of law, Brownsburg demonstrated undue hardship where Kluge's accommodation would not meet the needs of all of its students, "incurring a more than *de minimis* cost to its mission to provide adequate public education that is

---

[3] It is also worth noting that Kluge was the only teacher for several music and orchestra classes at Brownsburg, RSA-005, giving students interested in those classes no other option but to quit their participation in a public school music education entirely if they did not want to be in one of Kluge's classes.

equally open *to all*." RSA-045–46; *see also Erlach v. New York City Bd. of Educ.*, No. 94-CV-4239, 1996 WL 705282, at *11 (E.D.N.Y. Nov. 26, 1996), *aff'd,* 129 F.3d 113 (2d Cir. 1997) ("interference with students' learning need not be undertaken because it constitutes 'undue hardship' for the employer").

## B. Public Employers Generally Meet the Undue Hardship Standard Where an Employee Accommodation Would Impede Access to Governmental Services.

This Court has consistently rejected requests by public servants to eschew their duties, where their preferred accommodation would pose an undue hardship. In a series of three cases, this Court rejected failure to accommodate claims by police officers that objected to particular assignments. *See Endres v. Ind. State Police*, 349 F.3d 922 (7th Cir. 2003) (upholding termination of officer who objected to assignment at casino); *Rodriguez v. City of Chicago,* 156 F.3d 771 (7th Cir. 1998) (holding officer who refused to protect abortion clinics and their clients had been offered reasonable accommodation in transfer to another precinct—not exemption from patrolling clinic); *Ryan v. U.S. Dep't of Justice*, 950 F.2d 458 (7th Cir. 1991) (rejecting an FBI agent's accommodation request to be free of any assignment concerning nonviolent opposition to military activities). In each case, this Court highlighted how important it is that law enforcement agencies be able to fulfill their missions, as Title VII does not require the agencies to attempt a compromise that would jeopardize their duty to serve and protect the public. *Endres*, 349 F.3d at 925–26; *Rodriguez*, 156 F.3d at 779 (Posner, C.J., concurring) ("The objection [to recusal] is to the loss of public confidence

in governmental protective services if the public knows that its protectors are at liberty to pick and choose whom to protect."); *Ryan*, 950 F.2d at 462.

In *Endres*, this Court rejected an officer's request for a religious accommodation to be able to reject his assignment at a casino, as it would place an undue hardship on the police department. 349 F.3d at 927. Just as schools have a legal obligation to educate students, police have an obligation under both state law and the Constitution to "enforce the law and protect potential victims free of religious favoritism." *Id.* at 926. Accordingly, police departments "may insist that all members of their forces (volunteers rather than conscripts) do their parts in fulfilling this duty." *Id.* In reaching that conclusion, the Court queried the effect on various populations that would be left exposed to crime if officers object to protecting them. *Id.* at 925. The Court cited Chief Judge Posner's concurrence in *Rodriguez*, reasoning that:

> "[t]he public knows that its protectors have a private agenda; everyone does. But it would like to think that they leave that agenda at home when they are on duty—that Jewish policemen protect neo-Nazi demonstrators, that Roman Catholic policemen protect abortion clinics, that Black Muslim policemen protect Christians and Jews, that fundamentalist Christian policemen protect noisy atheists and white-hating Rastafarians, that Mormon policemen protect Scientologists, and that Greek-Orthodox policemen of Serbian ethnicity protect Roman Catholic Croats. We judges certainly want to think that U.S. Marshals protect us from assaults and threats without regard to whether, for example, we vote for or against the pro-life position in abortion cases."

*Id.* at 927 (quoting *Rodriguez,* 156 F.3d at 779 (Posner, C.J., concurring)). Given this obligation to serve the public equally, the Court ultimately held that Endres's request

to reject a particular assignment was "a demand that it would be unreasonable to require any police or fire department to tolerate." *Id.* at 926.

A teacher in Kluge's position faces the same obligation to serve all students equally. Brownsburg attempted to exercise "good will" and "flexibility" to make Kluge's accommodation work, but it became clear that it was harming students; Title VII does not require any school to accommodate a policy that undermines its public mission and governmental duty by denying students' dignity and equal access to education. *Ryan*, 950 F.2d at 462. As the record below showed, even if Kluge's last-names-only policy was technically the same for all students, the result was that transgender students in particular were harmed. They felt "targeted" by Kluge, RSA-044, which is evidence enough that he was not fulfilling his duty neutrally and or respecting all students.

Just as police officers must be held "to their promise to enforce the law without favoritism—as judges take an oath to enforce *all* laws, without regard to their (or the litigants') social, political, or religious beliefs. Firefighters must extinguish all fires, even those in places of worship that the firefighter regards as heretical," *Endres*, 349 F.3d at 927, so too must public school teachers treat all students with dignity and in a manner that does not undermine the school's interest in protecting student wellbeing.

Other courts have likewise held that government employees' requests for accommodations may be unreasonable where they impede an agency's ability to offer services to the public in a religion-neutral manner. *See Berry v. Dep't of Soc. Servs.,*

447 F.3d 642, 655 (9th Cir. 2006) (holding that government employee need not be allowed to evangelize or display religious items at work because "allowing [him] to discuss religion with the [employer's] clients would create a danger of violations of the Establishment Clause of the First Amendment"); *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167–68 (2d Cir. 2001) (reasoning that a nurse consultant who evangelized to a gay patient about the sinfulness of homosexuality could reasonably be barred from doing so because her conduct "would jeopardize the state's ability to provide services in a religion-neutral matter"); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 228 (3d Cir. 2000) (noting "[i]t would seem unremarkable that public protectors such as police and firefighters [and public health care providers] must be neutral in providing their services" for purposes of ensuring "public trust and confidence"); *Sides v. NYS Div. of State Police*, No. 03-CV-153, 2005 WL 1523557, at *6 (N.D.N.Y. June 28, 2005) ("Where, as here, the proposed accommodation could conceivably threaten to compromise public safety, the employer's burden of establishing an undue burden is light indeed."). Likewise, as a public school teacher, Kluge should not be exempted from adherence to the Nondiscrimination Policy, so that all students have equal access to education.

Further, that Kluge is a public school teacher rebuts his argument that Brownsburg is permitting a "heckler's veto" by wishing to respect the needs of transgender students. Appellant's Br. 4, 12. As the district court recognized, Kluge is improperly importing a free speech defense into a Title VII suit. RSA-030. But even in the free speech context, this Court has held that "public-school teachers must hew

to the approach prescribed by principals (and others higher up in the chain of authority)" as "the school system does not 'regulate' teachers' speech as much as it *hires* that speech." *Mayer*, 474 F.3d at 479. "The Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials." *Id.* at 480.

Because Kluge is a *public school teacher* subject to the *school district's* policies, his contrary citations are inapposite. For example, *United States v. Varner*, 948 F.3d 250 (5th Cir. 2020), addresses *courts* and *litigants*. *Id.* at 254–55. Despite Kluge's complete—and misleading—rewriting of the quote, Appellant's Br. 36, the quotation had nothing to do with school districts and teachers. Likewise, *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874 (7th Cir. 2011), addresses the free speech rights of students, which is subject to an entirely different standard than public employees like teachers. *Id.* at 876.

Finally, given the injury to transgender students that resulted, Kluge's description of his last-names-only policy as "neutral," Appellant's Br. 4, 24, 32, is incorrect. But even assuming it is facially neutral, it does not prevent this Court from concluding that the accommodation posed an undue hardship on Brownsburg— particularly in light of its public duties. The Sixth Circuit's decision in *Ermold v. Davis*, 936 F.3d 429 (6th Cir. 2019)*, cert. denied,* 141 S. Ct. 3 (2020), is illustrative of the standard that public employees must be held to in offering governmental services to the public. There, Kim Davis, a County Clerk for Rowan County, refused to issue marriage licenses for any couple after the Supreme Court recognized a constitutional

right to marriage for same-sex couples, on the basis that issuing marriage licenses to same sex couples violated her religious beliefs. *Id.* at 432. In determining whether Davis violated the rights of couples seeking marriage licenses, and so was not protected by qualified immunity, the court summarily rejected Davis' argument that, "[b]ecause she stopped issuing licenses to all couples regardless of their sexual orientation," there was no constitutional violation. *Id.* at 435–36. Davis, as a public official, was in a position to provide services to the public on equal footing and could not act as a gatekeeper in restricting access to those services—whether to one couple or to all couples. "[O]ne could say that Davis provided 'equal protection of the laws,' but in reality, her alleged conduct amounted to equal *deprivation* of the due-process right to marry." *Id.* (citation omitted). Nor did it matter that couples could have gone to other counties to get marriage licenses: "*All* government officials must respect *all* constitutional rights." *Id.* Davis "could not refuse to issue marriage licenses, as was her duty under state law, because of moral disapproval of homosexuality." *Id.* at 442 (Bush, J., concurring in part and in the judgment). Kluge, likewise, is not entitled to an accommodation that harmed some students—even if it was crafted to equally apply to all students.

## II. THE HARM FROM KLUGE'S ACCOMODATION TO DIRECTLY AFFECTED STUDENTS ESTABLISHES AN UNDUE HARDSHIP.

At the core of the district court's holding that Kluge's accommodation posed an undue hardship to Brownsburg was the finding that transgender students felt "targeted and uncomfortable," and others found Kluge's behavior "made his classroom environment unwelcoming and uncomfortable." RSA-044. Where, as here, a proposed

accommodation would injure other individuals, courts have consistently recognized that employers may consider that injury in establishing that they meet the undue burden standard.

The Supreme Court established in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), that an accommodation poses an "undue hardship" to an employer if it would make the employer "bear more than a de minimis cost." *Id.* at 84; *see also EEOC v. Walmart Stores E., L.P.*, 992 F.3d 656, 658 (7th Cir. 2021) ("undue hardship" standard means that employers need not bear more than a "slight burden"). In *Hardison*, an employee of TWA sought time off from sunset on Friday to sunset on Saturday to observe his Sabbath, a tenet of his religion. 432 U.S. at 67. The Court agreed with TWA's assessments that all of the proposed accommodations would force TWA to bear more than a de minimis cost, including a proposal to let the employee change shifts, as that would require violating the seniority provisions in the employees' collective bargaining contract. The Court emphasized the harm that requiring TWA to override the contract and seniority system would have on other employees: "It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far." *Id.* at 81. Otherwise, TWA would be forced to bear additional costs that it would not incur to give other employees their preferred days off, which goes beyond a reasonable accommodation to "unequal

treatment of employees on the basis of their religion." *Id.* at 84. The Court declined to "construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath." *Id.* at 85; *see also Nottelson v. Smith Steel Workers D.A.L.U. 19806, AFL-CIO*, 643 F.2d 445, 451 (7th Cir. 1981).

This Court has followed the Supreme Court's lead, holding that employers demonstrate an undue hardship where an accommodation would injure other employees. *See Walmart*, 992 F.3d at 659 (rejecting accommodation that would burden other employees as that "would not be an accommodation *by the employer*, as Title VII contemplates," but "would thrust on *other workers* the need to accommodate [the employee's] religious beliefs. That's not what the statute requires."); *Noesen v. Medical Staffing Network, Inc.*, 232 F. App'x 581, 584–85 (7th Cir. 2007).

And courts are not only concerned about other employees' workload and benefits; they also consider whether an accommodation would result in discrimination against other employees. In *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004), the Ninth Circuit held that "an employer need not accommodate an employee's religious beliefs if doing so would result in discrimination against his co-workers or deprive them of contractual or other statutory rights." *Id.* at 607. There, the court concluded that an employer did not need to accommodate an employee who believed homosexuality was sinful, by allowing the employee to post hostile scriptural passages condemning "gay behavior" to counter diversity affirming posters, as employers "need not accept the burdens that would result from allowing actions that

demean or degrade, or are designed to demean or degrade, members of its workforce." *Id.* at 602, 607–08; *see also Matthews v. Wal-Mart Stores, Inc.*, 417 F. App'x 552, 554 (7th Cir. 2011) (permitting employee to "admonish gays at work to accommodate her religion" would expose employer to claims of permitting workplace harassment); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1021 (4th Cir. 1996) (rejecting employee's accommodation request to write letters to her co-workers "accusing them of immoral conduct" as employee's "religious need to impose personally and directly on fellow employees, invading their privacy and criticizing their personal lives" would subject employer to possible suits from *other* employees for religious harassment); *Swartzentruber v. Gunite Corp.*, 99 F. Supp. 2d 976, 979 (N.D. Ind. 2000) (explaining that allowing an employee to keep his racist tattoo exposed at work would be an undue hardship because the tattoo violated its "racial harassment policy"); *Summers v. Whitis*, No. 4:15-CV-93, 2016 WL 7242483, at *7 (S.D. Ind. Dec. 15, 2016) (holding in the alternative that a county was not required to reasonably accommodate a clerk who declined to process marriage licenses for same-sex couples because the employer's "directive" that she do so was not its own requirement but "merely an effort to comply with the Seventh Circuit's mandate . . . expressing forbid[ding] . . . Indiana from enforcing its same-sex marriage ban"). Title VII does not prohibit Brownsburg from considering enforcement of its policies to protect students from discrimination as a basis for denying Kluge an accommodation. *See Ervington v. LTD*

*Commodities, LLC*, 555 F. App'x 615, 618 (7th Cir. 2014 (citing *Vaughn v. Vilsack*, 715 F.3d 1001, 1006–07 (7th Cir. 2013)).[4]

This line of cases following *Hardison* is clear that Brownsburg is entitled to consider the harm that Kluge's proposed accommodation inflicted on directly affected parties—here, students in his class. Kluge attempts to downplay the injury to transgender students and others, as well as distinguish *Peterson*, by describing Brownsburg's alleged hardships as just "grumblings" and mere "unhappiness with the accommodation the district extended to Mr. Kluge." Appellant's Br. 4, 12, 34–35. But Kluge's characterization elides that these were complaints from students in his class, directly resulting from the *accommodation he demanded*, expressing the actual negative harm that Kluge's last-name-only accommodation had on them directly. It is simply untrue that the accommodation "worked well for everyone." Appellant's Br. 11. Brownsburg's concerns are not hypothetical, as it has already seen the negative impact of Kluge's accommodation—putting Brownsburg on even "'stronger ground'"

---

[4] Kluge contends that, even if the Nondiscrimination Policy is neutral, it must "'give way to [his] need for an accommodation.'" Appellant's Br. 39 (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015)). This misunderstands what was at issue in Abercrombie, as well as the undue hardship standard. The Court in *Abercrombie* was considering whether an employer still has a duty to accommodate an employee's religious beliefs, even in light of a neutral policy. 575 U.S. at 775. The answer is unequivocally yes, that the responsibility to accommodate remains. *Id.* However, the Court did not reach whether any particular accommodation exempting an employee from that policy constitutes an undue hardship. In fact, the Court did not consider the undue hardship standard at all, leaving in place the Court's formulation that where accommodations pose a de minimis cost on employers, an employer is not required to make them available to an employee. Brownsburg does not rely on the neutrality of its Nondiscrimination Policy alone, but offers concrete harms to its mission as evidence that Kluge's accommodation would pose more than de minimis costs to the school.

as it has attempted to accommodate Kluge, and can "'point to hardships that actually resulted.'" *EEOC v. IBP, Inc.*, 824 F. Supp. 147, 154 (C.D. Ill. 1993) (quoting *Draper v. U.S. Pipe & Foundry Co.,* 527 F.2d 515, 520 (6th Cir. 1975)).

The district court correctly found that "the undisputed evidence in this case demonstrates that the last names only accommodation indeed resulted in undue hardship," as declarations from transgender students "show that Mr. Kluge's use of last names only. . . made them feel targeted and uncomfortable." RSA-044. One transgender student felt so uncomfortable speaking to Kluge because of his last-names-only policy that the student eventually "quit orchestra entirely." RSA-044. In dismissing this harm as "grumblings," Appellant's Br. 12, 33, 35, Kluge also completely ignores the district court's recognition that *he conceded* his preferred accommodation harmed students. The court noted that Kluge had acknowledged that "failing or refusing to affirm a transgender individual's identity using preferred names and pronouns causes psychological and emotional harm"—which is the very harm Brownsburg sought to alleviate through its Nondiscrimination Policy. RSA-027. Kluge admits to the harm, but contested below that such harm was sufficient to constitute an undue burden, RSA-027, and on appeal does not contest the district court's holdings as to these admissions. However, such an injury to students, to whom Kluge has a custodial duty, does impose an undue burden on Brownsburg,

particularly where the students are his captive audience as part of their compulsory education. *See* Part I.[5]

The fact that Kluge's accommodation injured students, not just other employees, does not change the undue hardship analysis under this Court's precedent, as employers may consider the wellbeing of other directly harmed individuals, particularly where the accommodation would negatively affect the employer's ability to serve them. This Court has already recognized the key role that others injured by an employee's accommodation request—not just other employees—play in the Title VII analysis. In *Baz v. Walters*, 782 F.2d 701 (7th Cir. 1986), a U.S. Veterans Administration medical facility hired a chaplain, Reverend Franklin Baz, to conduct ministry for the patients there, but ultimately terminated him in part because of his approach to ministry. He sued, alleging the hospital failed to accommodate his religious practice. The hospital argued in response that part of its "motivation in terminating Reverend Baz was to further the primary purpose of the hospital, which is the overall well-being of the patients," and that Reverend Baz was "unable to conform" to the approach to patient care adopted by the facility. *Id.* at 706. This Court accepted those arguments, rejecting Reverend Baz's demand that the facility demonstrate a "business necessity" or substantiate its claims with "'objective, expert testimony' that the 'health and welfare' of the Danville patients was harmed

---

[5] For this same reason, the parade of horribles that Kluge proposes will follow if he is not granted an accommodation, arguing that Title VII does not "allow[] anti-Semites to expel Jews who wear yarmulkes, or conspiracy theorists to banish Muslims who pray five times a day," Appellant's Br. 36, is entirely distinguishable. Kluge's accommodation harms the very students he is assigned to teach, whereas, in the abstract, Jews wearing yarmulkes and Muslims praying do not harm anyone else.

by his evangelism at the hospital." *Id.* The undue hardship standard, explained the Court, is not so demanding. The Court similarly did not delve into whether the facility's approach to patient care was "objectively better" than Reverend Baz's proposal—it was enough that the facility had adopted a particular approach, and viewed Reverend Baz's practices as "damaging" to patients. *Id.* at 706–07.

Brownsburg is likewise entitled to latitude in considering the effect of an accommodation on directly harmed parties as well as afforded discretion in how it wishes to protect those parties. Kluge attempts to minimize the harm to students by claiming they were just "offended by being called by their last name." Appellant's Br. 15–16, 37. But this Court has also found that employers demonstrated an undue hardship where the employees' conduct was offensive or harmful to coworkers or other injured individuals, even if not discriminatory. *See Ervington*, 555 F. App'x at 618 (holding that an employer is "not required to accommodate [an employee's] religion by permitting her to distribute pamphlets offensive to other employees"); *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 476 (7th Cir. 2001) (holding that a shipping company had reasonably accommodated an employee's religious compulsion to end every conversation with "have a blessed day" where it requested that she not use the phrase with a customer who objected); *see also Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1341 (8th Cir. 1995) (explaining that an employer reasonably accommodated an employee by asking her to cover a graphic anti-abortion button while at work since it would otherwise be permitting her to "impose her beliefs as she chooses" and "cause[] substantial disruption at work"); *Schwingel v. Elite*

*Protection & Security Ltd.*, No. 11-CV-8712, 2015 WL 7753064, at *6 (N.D. Ill. Dec. 2, 2015) (employer "was not required to accommodate [an employee's] religion by permitting him to use a special chair and sign"—that described the uncleanliness of women while menstruating—"offensive to other employees"); *Gunite*, 99 F. Supp. at 979 (holding that an employer had reasonably accommodated an employee in asking him to cover his tattoo of a hooded figure in front of a burning cross while at work and that "any greater accommodation" would have caused "undue hardship" since that tattoo violated the employer's "racial harassment policy and offended other employees"). That Kluge was not explicitly discussing his religious beliefs about transgender individuals to students does not change the hardship his accommodation imposes on Brownsburg. What matters is that here, as in the above examples, his accommodation harmed those around him—and particularly, he harmed students whom he has a duty to respect and to provide with an equal education. Brownsburg's ability to recognize and consider such harms in rejecting Kluge's accommodation should be upheld.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.


Dated: November 8, 2021

Respectfully submitted,

/s/ *Kenneth J. Falk*

Lindsey Kaley
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
212-549-2500
lkaley@aclu.org

Kenneth J. Falk
*Counsel of Record*
Gavin M. Rose
ACLU OF INDIANA
1031 E. Washington St.
Indianapolis, IN 46202
317-635-4059
kfalk@aclu-in.org
grose@aclu-in.org


*Attorneys for Amici*

# CERTIFICATE OF COMPLIANCE WITH RULE 32

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned counsel for *Amici Curiae* certifies that this brief:

    i.      complies with the type-volume limitation of Fed. R. App. P. 29(d), Fed. R. App. P. 32(a)(7)(B)(i), and 7th Cir. R. 29 because it contains less than 7,000 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

    ii.     complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as modified by 7th Cir. R. 32(b) and the style requirements of Fed. R. App. P. 32(a)(6).

Dated this 8th day of November, 2021.

/s/ *Kenneth J. Falk*
Kenneth J. Falk
*Counsel of record for Amici*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2021, I electronically filed the foregoing BRIEF OF AMICI CURIAE THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION AND THE AMERICAN CIVIL LIBERTIES UNION OF INDIANA FOUNDATION IN SUPPORT OF DEFENDANT-APPELLEE BROWNSBURG COMMUNITY SCHOOL CORPORATION, SEEKING AFFIRMANCE OF THE DISTRICT COURT'S ORDER with the Clerk of Court for the Seventh Circuit using the Court's CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.


/s/ *Kenneth J. Falk*
Kenneth J. Falk
*Counsel of record for Amici*